Welcome to the 1st District Appellate Court, the 1st Division thereof. My name is Terry Levin. I'll be the presiding judge at today's oral argument. And along with me is my, are my colleagues, Justice Aurelia Puchinski and Justice Michael Hyman. We're here on the case of the people of the state of Illinois versus Timothy Herring 1-21-0355. We're familiar with the brief and the records, the briefs and the records so confine your argument to the, that which is necessary to advance your position we're looking for about 15 minutes or so a piece. We may interrupt you with questions from time to time which might extend that period but just give us your best effort so let's hear first from the appellant. Good afternoon, Your Honors. Timothy Herring's post-conviction petition alleges that the mandatory natural life sentence he received imposed for murders he committed when he was 19 violates the proportionate penalties clause of the Illinois Constitution as applied to him, because he was similar to a juvenile at the time, and the court lacked discretion to consider these similarities when sentencing him. At the outset, it's important to note that at the first stage of post-conviction proceedings, Herring was not required to prove that he will ultimately prevail on his claim that his sentence is unconstitutional. Rather, he was required only to state the gist of an arguable constitutional claim. And that's a very low threshold, isn't it? Yes, Your Honor. And specifically in the context of emerging adult claims for emerging adults who, like Herring, receive mandatory life sentences, making the showing means making the arguable showing means showing how the evolving science on juvenile maturity and brain development applies to his specific facts and circumstances. And what did, what did he supply us with in terms of the petition to back that up. He cited to brain research, showing that young adults are more prone to impulsive risky behavior, and he alleges that at 19, he embodied these characteristics in that he was immature. He could not appreciate the risks and consequences associated with his actions, and he had an impulse control disorder and attention deficit disorder. Well, did he supply us with any medical diagnosis affidavits anything from some professional to indicate that those conditions, one or more of them might pertain to him. No, Your Honor, but in determining whether a petitioner like Herring has sufficiently, you know, alleged how the brain research relied on and Miller applies to him personally, it must be kept in mind again that these petitions are being filed by pro se incarcerated individuals. For this reason, petitioners are not required to state a set forth their claims in their entirety, and are required to present only a limited amount of detail. And what was the limited amount of detail about his behavior and his mental state of mind that was offered. Specifically, hearing that he suffered from impulse control disorders and possibly attention deficit disorders. He further alleged that as a direct result of his underdeveloped mind and immaturity diminished mind state and capacity. He wasn't able to appreciate the risks consequences and the serious nature of the charges that he was charged with and the circumstances associated with those charges. Is there a distinction between being able to understand the charges and being able to understand and appreciate the nature of his actions and murdering people, is there a difference there. Yes, Your Honor, I think it's two separate related points he says that he couldn't understand the nature of the charges, and that he also couldn't associate the circumstances involved, or he couldn't appreciate the circumstances involved. So, liberally construed as his petition must be at this stage, you know, it's clear that you know pairing is not an attorney. He's doing his best to articulate a very concept that's difficult even for lawyers to understand. And he's doing it in to the best of his ability to show how the brain research relied on and Miller applies to his specific facts and circumstances. You know, when a defendant raises a first stage PC challenge, claiming his immaturity impaired his criminal behavior. Doesn't the post conviction hearing act and Supreme Court case law. Require something in the record, or something attached to the petition to corroborate or support the allegation as to his youthfulness above and beyond the defendants mere age which in this case was 19 years old. At this stage, hearing it as this court said in people via zoom at at this stage he was only required to allege facts that are capable of cooperation. And he has done just that, you know, with the aid of aid of an attorney at the second stage pairing can go about showing whether he has an impulse disorder or what his maturity level was Through a psychological evaluation or by looking at a school records talking to family members presenting evidence regarding his upbringing and the environment that he grew up in. And the fact that he didn't include, you know, this specific information at this point is unsurprising because as a pro se litigant. Tell that pro se litigants are usually unaware of the precise legal basis for their claims as well as which facts, they need to allege in order to support those clients. Both his counsel and the defendant himself were aware of his repeated criminal activity prior to the Shooting and killing of this the police officer and the owner of the car, correct. Yes, Your Honor. But as counseling knowledge during sentencing because of the mandatory nature of the sentence hearing was facing the court had no discretion to impose a lesser punishment. So even if this council said that, you know, counsel argued that, you know, in a just world, the court should have been able to consider hearings age and the attended circumstances. But the law at the time simply did not allow the court to consider that. And so no information beyond really his age was ever presented to the sentencing court. And in any event, if that information had been presented the sentencing court couldn't have considered it anyway because this was a mandatory natural life sentence. What kind of assistance to the court get from the defendant and the PSI Mr. Herring did not cooperate with the in the filing of the PSI likely because he realized that if nothing in the PSI could change the sentence that the court was going to impose. There was no, you know, it no matter what the PSI said he was going to be sentenced to a mandatory natural life sentence. But before this action occurred, he had assaulted his high school teacher, committed an armed robbery of a liquor store where he fired his gun, got a six year sentence, served some time, was out on parole. And while he was on parole from the armed robbery, tried to run over two people in a car and shot at one, then turn around and try to run somebody down. And then on 11-26-10, we have the underlying crime here. Sounds like this particular defendant was not lacking in attention deficit because all of these things seem to have been pretty well thought out. Well, it should be noted too that the incident involving his teacher and these other prior alleged crimes occurred while Herring was a juvenile. As far as the teacher, there was evidence at the sentencing hearing that the school ended up backing Herring in that incident. So I don't think that the sentencing hearing really brought out the full story with what happened with his teacher. And yes, Herring was previously convicted of an armed robbery when he was 16 years old. But again, if Herring can show that Miller applies, Miller provides protections even for offenders who have committed repeat crimes and who have shown their impulsivity in their young age. The question is whether or not these characteristics are transitory or whether they're of a more permanent nature. And that is what Herring is attempting to set out to prove through his post-conviction petition. What was it about the crime that is involved in the direct appeal and your post-conviction error? What about it was impulsive on the part of the defendant? Well, after finding out that he was likely going to be caught for the theft of the speakers, he made a split-second decision to pull the trigger here. And so he gave no thought really to the consequences of his actions or the fact that he was only making things worse for himself. And the court's comments during sentencing sort of reinforced this. The court repeatedly said, what did you think was going to happen? Did you think that you weren't going back to prison? She noted even that he probably wouldn't have even been caught for the theft of the speakers. So again, I think that that actually supports his assertion that he was impulsive in the same way that a juvenile was impulsive and that he simply could not think through the consequences of his actions. And whether that's a permanent trait or whether that's, again, whether that's a permanent trait or whether that's something that's transient, that is what Herring is setting out to try to establish through post-conviction proceedings. But isn't it true that at stage one, we don't even consider that? We're not looking for proof at this stage. That's what comes later. Is that right? Correct, Your Honor. At this stage, his allegations must be taken as true and liberally construed. The only requirement is that he state the gist of an arguable claim that Miller applies to him. And based on his allegations and based on previous cases from this court and other Illinois appellate courts, his allegations are more than sufficient to meet that threshold required to advance to second stage proceedings. And there's nothing in the rule, there's no Supreme Court case that says you need to have documentation. And in fact, the state does not cite any such case or any support for that statement in their brief, do they? That's correct, Your Honor. No, no Supreme Court case has held that there needs to be some sort of documentation or anything else attached to it. And there's no rule that says that? Correct, Your Honor. So I guess there's no rules, no cases. Everything's a go here. Well, excuse me, Justice Levin, that's not exactly true. In our opinion, after the direct appeal, we told him in paragraph 104, file a post-conviction petition because that's where this issue should be brought up. So he's just doing what we told him to do. Correct, Your Honor. And in fact, you know, the instructions on the direct appeal were perfect, were entirely consistent with the Illinois Supreme Court's decision in People v. Harris. In Harris, the court found that when, you know, in order for a claim like this, there needs to be a factually developed record. And so the proper procedure is to allow the defendant to develop that record. And only then can it be determined whether, you know, once that process has been complete, then it can be determined how to proceed on the constitutionality of the sentence. We could theoretically allow him to move forward with this post-conviction petition to the second stage without really taking any position on whether he's going to be successful. We can just say, okay, go ahead, give it your best shot with an attorney. Correct, Your Honor. That is all Herring is asking for at this point is for the opportunity to prove his claims with the aid of an attorney. And with the state arguing against him. So there'll be a full hearing. Yes, correct, Your Honor. The state will have their input as well. And we don't have to take a position on whether or not he'll be successful at this point. No, Your Honor. Just briefly, what about the Dorsey case? Doesn't Dorsey suggest that the defendant must raise a proportionate penalty claim at sentencing in order to avoid forfeiture? Well, Dorsey specifically addressed whether the defendant had shown cause for failure to raise his claim previously. But that was based on the longstanding distinction between defendants who are juveniles for purposes of sentencing and defendants who are adults. The court said that Miller merely provided helpful support for such a claim. But in Illinois and nationwide, there is no longstanding distinction between defendants like Herring who are 19 and much older defendants. So I believe that Dorsey is not applicable to this case. It dealt with cause rather than forfeiture, and it dealt with a juvenile rather than an emerging adult, where this case law has been developing only in the very recent past. Okay, thank you. That's all the questions I have. With regards, yes, with regard to the fact that the previous decision in this case suggested this procedure that we are now, that's now before us. Would you say that, is there an argument that that's the law of the case? When a court has said and invited in an opinion and said, yeah, you may have a claim, you may not. We don't know, but the way to bring that claim is through this procedure. Does that mean that anything that happened theretofore would prevent him from doing so if the courts have said that? No, Your Honor. As you correctly point out, if the court thought that filing a post-conviction petition in this case would have been frivolous or without merit, it could have said so at the direct appeal stage. And instead, it suggested that Herring file a post-conviction petition raising this exact issue. Here, he has done that. He's just looking for the opportunity to prove, or with the aid of an attorney, to develop his claim and perhaps ultimately prove it. Is that because he had brought it up in the previous appeal? Exactly, Your Honor. Yes. I wanted to make that clear that in the previous appeal, this issue was before us. We can't do it because there isn't a record necessary for us to do it, and it should be done in the post-conviction procedure. Correct? Correct, Your Honor. And Herring has now set out to try to develop the record that this court found lacking on appeal, consistent with the Illinois Supreme Court's decision in Harris. And for that reason, this court should remand for second-stage proceedings and the appointment of counsel. Also, you make several arguments as to why we should reverse this. And which of the arguments would you say is your strongest? Not that all of them don't apply or they're not good arguments, but of the arguments you make, which one do you believe is the strongest argument for reversal here? The strongest argument is that Herring was only required to allege sufficient facts to show that he is akin to a juvenile. He has alleged those facts under the existing Illinois Appellate Court case law. He's made an arguable showing that he is akin to Miller. And so really, any other considerations are beside the point at this stage. Because, for one, this court has held that it must first be determined whether or not he's akin to a juvenile before any other matters can be addressed. And two, because in this case, Herring faced a mandatory natural life sentence. And so if he is akin to a juvenile, then his sentence is unconstitutional because Miller prohibits mandatory life sentences for juveniles. Isn't that the crux of why? That says it better than anything else. Correct? Correct, Your Honor. It's the mandatory nature of this case that makes remand for second stage. And some of the cases, not all of them, but many of the cases cited by the state are discretionary sentences or minors. We have a rising adult here in that 18 to 21 range. Correct. And that's why the state's point regarding Holman is really Holman has no applicability here because Holman deals with discretionary sentences. And is a manner of determining whether or not the court considered the Miller factors before applying a discretionary sentence. But here, the court had no discretion. It was a mandatory sentence. The court had no choice. And so if Herring can show that he's akin to a juvenile, the sentence would be unconstitutional because Miller prohibits mandatory life sentences for juveniles. Okay, so that's an excellent response to those questions. My question to you is, what are those facts? You said there are facts that he alleged. And to me, what I see is a conclusion that he might have ADD, that he might have impulse control issues. What are the facts, if any, that have been alleged in this post conviction petition? I mean, as you said, that he does have an impulse control disorder, that he does have ADD, that he is immature and unable to appreciate the consequences of his actions. And many cases in Illinois have found those allegations to be sufficient to state an arguable basis of a claim or to satisfy the cause and prejudice test applicable to successive post conviction petitions. There are cases that have found otherwise, but the fact that there's contrary authority does not defeat Mr. Herring's claim, because at this point, he was only required to allege the arguable basis of a claim. For example, in People v. Chambers, the court found that there were some cases that supported summary dismissal and some cases that counseled against it. But the court found that this very split in authority mandated remand for second stage proceedings because they stated all that we require of a pro se petition is that it be arguable. And to call the pro se petition in this case not arguable, we would have to call some decisions by the appellate court not arguable, which of course would be untenable. The same situation here, Herring's allegations are arguable under numerous Illinois appellate court cases. And therefore, in order to reject his petition at this stage, this court would have to call those decisions not arguable. So just as in Chambers, Herring's petition has alleged sufficient facts to warrant second stage proceedings. Thank you. Let's hear from the state. Thank you. Good afternoon. Douglas Harbath on behalf of the people of the state of Illinois. This court should affirm the trial court's judgment dismissing the petition where it failed to adequately plead that defendants own facts and circumstances rendered his brain at the age of nearly 20 years, akin to that of a juvenile for purposes of sentencing. Didn't he do that? No, he didn't. Wait, wait. All he has to do is allege facts. He doesn't have to prove facts. Is that correct? Correct. And it's liberally construed. Is that correct? Of course that's correct. Okay, so why did you say that when he said that he had the ADD and the other things that he said he had about his mind, his immaturity, his impulsiveness, all those things are factual, aren't they? They're conclusions, Judge. No, no, wait, wait. He doesn't have to prove anything now, right? You're saying, oh, they're conclusions, but they're facts. Aren't they facts regarding him? Are they facts regarding him? They're not well-pled facts, Your Honor. Why are they not well-pled facts? Because they are mere conclusions. And if I could just try to get an answer in here, Your Honor said during my opponent's argument that there's no rule, there's no law, there's no statute that requires them to be supported by any documentation. The Post-Conviction Hearing Act itself is the statute, the very statute and the rule that requires that mere conclusionary allegations are unsupported by affidavits, records, or other evidence do not warrant further proceedings. That's the Post-Conviction Hearing Act, and that's the Illinois Supreme Court. Under Delton, the purpose, and this is a quote, the purpose of Section 122.2 is to establish that allegations are capable of objective or independent corroboration. So that's why a defendant's mere say-so is not enough. Well, this case is different than the other cases you cite because he does talk about himself personally. And it seems that the state has taken an extreme position that would actually make this, if we don't reverse this, it seems to me that we are reversing many cases that have been decided by the Illinois Supreme Court. It would be contrary to Illinois Supreme Court law and contrary to appellate court law, because that is not what the courts have said. You just are not willing to look at these allegations as anything other than... I'm willing to accept that that's true, and Your Honor, let me preface this by saying I understand, as I said in my brief, and as counsel to his credit said in his brief, there's a deep split of authority on this. But I kind of take a little umbrage by saying that my position is extreme just because I happen to be in this column and the defendant happens to be in this column. And I understand that the panel that I'm before, I understand, I'm acutely aware of the panel I'm before. But I don't think I'm taking an extreme position here. And I'd like to point out certain things that this court needs to consider, if I can get it out. What the post-conviction court itself found that just even getting past the scant nature of the pleadings, the fact that they're not well-pled, that there's no documentation or anything other than mere citations of these brain studies and science, that's not enough. This court and several divisions of this court seem to have a special dispensation. They absolve defendants who are making Miller-based claims for young adults. They're, for some reason, this particular issue, they're absolved of the pleading requirements. If they raise an ineffective assistance of counsel claim or a due process claim under the Post-Conviction Hearing Act, they are held to the affidavit requirement. They need to get an affidavit from a witness saying, I would have testified. I would have said this. I would have been in touch with counsel. They need to back it up with, as the Post-Conviction Hearing Act requires, affidavits, records, and other evidence, not just a mere say-so. But for some reason, when it comes to these Miller-based claims, according to your Honor, all he has to do is say that I had ADD. When I will say this about ADD, that is not a hallmark transient claim, excuse me, trait, rather, of a juvenile. I know plenty of adults that had ADD. That does not make them akin to juveniles. Neither does an impulse control disorder. If those are mental disorders, then they are mental disorders described by Atkins and Cody. And they're not what Miller was speaking to, where someone was impetuous and immature and subject to peer pressure. And he said that. He said all those things. He said all those things. And you want to decide those issues on the first stage. Is that right? We have to consider some kind of proof. You're asking that we rewrite the post-conviction statute so that there's proof. Basically, it's what you're saying in your brief. Well-pled facts. No, well-pled facts. A threshold is a threshold. If it's a low threshold, it's a low threshold. But it's a threshold nonetheless. There is a threshold. And if he just says that I was young and stupid, that's not enough, Your Honor. And there is any claims that are positively rebutted by the record. And if my memory serves me, at least five or six pages of the post-conviction court's written order were devoted to how his claims were absolutely and without a doubt positively rebutted by the record. This defendant showed not just the actions and the crimes that were charged. They were calculated and motivated by greed and self-interest and sheer violence. Those words are in your brief and they're a mere argument that has no basis. They're your conclusions. I'm saying that. There's nothing in the record that says that. But they're your conclusions. The evidence shows that. The evidence absolutely shows that. Excuse me. Excuse me. Okay, I'll let you talk. I'm asking you a question. So what would satisfy you only if there was documentation? Is that what is necessary here? Because a pro se, a self-represented person who's incarcerated is supposed to get an affidavit? Is that what you're saying? Even their own affidavit. They have family members. That's true. But where it doesn't require, there's some kind of delay between you and I. I'm sorry. Maybe if I mute myself. No, that's fine. But the fact is, courts have said you don't need in this situation. We're talking about a mandatory sentence. It didn't matter what happened. Miller comes around and Illinois adopts that situation, not at the time of the sentencing, but three years later, right? 2015. So he could not have done anything at the time of sentencing. Is that correct? But he could have done what Leon Miller did for sure. I mean, the proportion of penalties. And again, I'm not, I know that we argued in our brief forfeiture. Maybe that's incorrect use of that word. It's more like Justice Lavin was discussing what Dorsey said. I point that out merely as an analogy that he could have raised a proportion of penalties clause claim to the mandatory nature of a nationalized sentence. That's exactly what Leon Miller did. Leon just presaged Alabama versus Miller versus Alabama. And he could have done that. And Mr. Leon Miller was successful. He convinced the trial court and went to the Supreme Court and that was affirmed based on his, you know, all the mitigation evidence is merely accountable role as the getaway driver. Other cases haven't followed that. And we've had many cases where the allegations that were in the petition were similar to these and that has gone ahead to a second stage. I agree. I agree. Our case is yes. Why is this case, why should this case be different? Well, for all the reasons I've stated, but also because it's his, his, he was the sole perpetrator. It's this is and I'm not suggesting that a principal offender. I know there are cases that have said that the principal offender sort of can't take advantage of the Miller based claims for you adults. I'm not sure I agree with that. I think they can. But in this case, my point is that this particular defendant has committed, not just the most horrific crime imaginable, killing two people for his own profit and to stay out of prison. But his entire history, he is, he's a lone wolf. He is, he's the sole assailant in every case. He brings guns with him. He shoots him off. He wears his mask. He does it for profit. And he, everything is gold-ridden. So, that's not the issue. And, you know, you look at the United States. Is that no, you're, let's go to the second stage and maybe you're right. We don't know, but first he's got to get by Miller, right? So, you're, you're, you're making these arguments without having him have a chance when he had a man that story sets. If he falls under Miller, and that's what will happen next, right? Whether he falls under Miller, we don't know whether he does or doesn't. That will be determined by a judge. And then the arguments you can, you are making will be, be either raised or they won't because he doesn't get to the third stage. But we are, you're making arguments that to me are not appropriate in the first stage. Tell me why your arguments are appropriate in the first stage. Well, first of all, he did, and I'll just, I disagree with your honor. He says he did not have a chance. He has had a chance and there's no special dispensation for IDOC inmates or the fact that they're pro se or they're uneducated in the law. That's very clear. They don't get a special pass under the Post-Conviction Hearing Act. And it's already, and I grant you, it's already a liberal construction, liberal approach to their pleadings, but there's got to be something. So he has had a chance. He could have contacted his family to send letters, or he could attach anything to his petition under the sun, that he was a troubled youth, that he was, he had educational difficulties, that he was always impulsive and driven by his, you know, pure pressure, etc. There's none of that in there. There's just this flat, his own flat say so. And that, and I disagree with your honor that that's sufficient under the Post-Conviction Hearing Act, not just with regard to the Harris and Thompson house types claims, but like I said earlier, every other claim at first stage requires that it to be well pledged, it has to adhere to the requirements expressed in Delton and other cases that they're not, they're not Miller cases. Let's, let's go with the basics here. What does well pledged facts mean as opposed to poorly pledged opinions, what's the difference between those two concepts. I would describe them as and I think the post conviction section 122 to itself, actually, it tells what are well pled. They're all facts that are taken out, they are taken as true but they have to be well pled. And as Colin said it's not just a pleading requirement, it's an evidentiary requirement, there's two components that cannot be lost on this court. And the evidentiary component at first stage is that it may be shown to be capable of objective and independent corroboration. And that's done by not making a conclusory statement that I have attention deficit disorder. But that there's other records that show that I'm impetuous I'm immature that I'm subject to peer pressure and then I'm just, I would follow the leader. Those are to be well played they have to be backed up. Let me read to you, 122 dash 2.1, which I'm reading from your, your brief actually where you cited a post conviction petition is considered frivolous apparently without merit. If the petitions allegations and what we're talking about are allegations you want to call facts, or you want to come conclusions. Defendants want to call it facts, but the allegations taken as true fail to present that just a meritorious claim taken as true. So whatever you call them whether conclusions or facts, their allegations you would agree with that. And if, if taken as true they present that low threshold. That's the what the road sets. I will your honor is you can't ignore section two. I'm reading what is I'm reading the standard. It is you know if taken. If I could take it to its logical conclusion what your honor just said is that everyone just makes any statement under the sky however cockamamie it is taken as true you get to the second stage. You know that's not the case. That's just not the case. And I understand, again, we're all going to be struggling until the Supreme Court results. Well, well you're you're again you're going to the extreme cockamamie and all that's, we're not in doubt involved in that here we have, there have been cases. And where there haven't been enough raised where the defendant has lost on stage one I agree they're out there. Yeah, but this case is different. In those cases, nothing was written with regard to the individual personally. Here, we do have something race and that's what differentiates most of the cases by the appellate court. That go the other way from this case. Okay, any further questions. Let's hear some rebuttal. Just very briefly, Your Honor. Under the existing case law, both Illinois Supreme Court and Illinois appellate court hearings pleadings in this case are sufficient to advance to the second stage of post conviction proceedings. The court or the state refers to Leon Miller but again Leon Miller is a juvenile case, and Illinois as the Supreme Court noted in Dorsey. There has been a long standing distinction between juveniles and adults for purposes of sentencing. The distinction here between emerging adults and people who are past that age is a new is a novel one. And at the time of herring sentencing. It was not one that had any had been developed in any way. So there was really no way that herring could have presented any evidence regarding his youth at that sentencing hearing and had it have any reasonable effect. He is now at this stage, alleging as to the best of his abilities given his status as an incarcerated inmate as status as a lawyer status as somebody trying to navigate a very difficult issue of law and science. The plead facts sufficient to to warrant second stage proceedings, and he has made that showing, and this court should therefore reverse and remand for second stage proceedings and the appointment of counsel. Okay. On behalf of my colleagues, I would like to thank both sides, you know, I never cease to be impressed by the level of passion and commitment and excellence in both the brief writing and the arguments that each side of you present. And even though some of us may vigorously disagree with one side or disagree with the other side. We heard many examples today of excellence and oral argument advocacy by each of you and we appreciate it. We will take the matter under advisement and issue our ruling forthwith. Thank you very much. We are adjourned.